# IN THE COURT OF APPEALS OF IOWA

No. 14-0672
Filed September 17, 2014

IN THE INTEREST OF I.L.,
       Minor Child,

C.L., Father,
       Appellant.
_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle,
District Associate Judge.

A father appeals the termination of his parental rights to his seven-year-
old daughter.  **AFFIRMED.**

Christopher O'Brien of O'Brien Law Office, Fort Dodge, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant
Attorney General, Cori Kuhn-Coleman, County Attorney, and Jordan Brackey,
Assistant County Attorney, for appellee.

Derek Johnson of Johnson & Bonzer, P.L.C., Fort Dodge, for mother.

Marcy Lundberg of Marcy Lundberg Law Office, Fort Dodge, attorney and
guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

In terminating his parental rights, the juvenile court found I.L.'s biological father, Chris, "has chosen to be an absentee parent." The court concluded re-introducing him into his seven-year-old daughter's life after an absence of more than two years was not in her best interests. On appeal, Chris argues the Department of Human Services (DHS) did not provide him with reasonable services to facilitate reunification, and he contests the court's best-interest determination.

We reject both of the father's claims. The juvenile court found the DHS offered Chris visitation with I.L., but he quit coming. Chris has not maintained contact with his daughter and did not ask for additional services to help develop a relationship with her. Given his long absences from her life, terminating the father's parental rights served I.L.'s interest in finding a safe and permanent home.

## I.    Background Facts and Proceedings

Chris had sporadic contact with his daughter even before the DHS case opened. I.L. was born in October 2006 when Chris was still married to her mother. The parents divorced in 2008. The divorce decree granted Chris visitation. But in June 2009, the mother filed a petition to modify the decree, alleging Chris abused I.L. Despite receiving service of the modification petition, Chris did not respond. Eventually, the court entered a default judgment modifying the decree to allow the mother to limit Chris's visitation with I.L.

I.L.'s mother remarried. I.L. lived with her mother, stepfather, and two half siblings for about two years without having any contact with her father. In July 2011, the DHS investigated reports of abuse and neglect in the home of the mother and stepfather.[1] The juvenile court adjudicated I.L. as a child in need of assistance (CINA) on December 7, 2011.

The DHS worker met Chris after the CINA adjudication. At this point, Chris had not seen his daughter in two years. Chris attended three supervised visitations with I.L. between December 2011 and January 2012 at the public library. At first, I.L., who was then five years old, told the DHS worker she was scared of her father and did not want to see him. The DHS worker was not sure if the child's reaction was genuine or coached by the mother. Regardless of the source of the child's unease, because of the unresolved reports of abuse, the DHS prohibited Chris from having any physical contact with his daughter during the visits. Despite the restrictions, the worker reported the supervised interactions between Chris and I.L. went well.

But in February 2012, without any explanation, Chris stopped coming to the visits. The DHS worker reported I.L. had begun anticipating the visits with her father and was bothered when he did not show up. After a couple of missed visits, the DHS asked Chris to call the service provider in advance to confirm that he would be coming to the library; Chris did not make any calls. Chris did not see I.L., participate in services, or have contact with the DHS case worker after those three visits. The DHS worker testified she tried to call Chris after he

---

[1] This appeal does not involve I.L.'s half siblings, her mother or her stepfather.

stopped attending the scheduled visits, but his phone was disconnected and the DHS did not have an accurate address for him.

Almost two years passed without Chris seeing his daughter. Then, on the eve of the December 2013 termination hearing, Chris renewed contact with the DHS and asked for visitation. Meanwhile, the court learned Chris—who lived in South Dakota—had not been properly served with notice of the termination hearing. The court continued the portion of the hearing involving I.L. until January 29, 2014. Chris attended the two days of the hearing that addressed the State's petition to terminate his parental rights to I.L.

On the last day of the hearing, Chris tried to explain why he stopped visiting I.L. He testified the service provider told him at the library in January 2012 that I.L was going back home to her mother and stepfather and visits with Chris would stop. Chris further testified he called the DHS office soon after that conversation, but did not reach the social worker assigned to I.L.'s case. Chris also acknowledged he had a court-appointed attorney in the CINA case but did not ask the attorney for help with continuing visits with I.L. Chris admitted he did not try again to contact the DHS until receiving paperwork involving the termination action.

On April 13, 2014, the juvenile court issued an order terminating Chris's parental rights to I.L., under Iowa Code section 232.116(1)(f) (2013). The court found Chris "had never been involved with services" and had failed to attend visitations after January 2012. The court concluded I.L. had been "exposed to the never-ending uncertainty" of her parents' behaviors and her childhood had

been disrupted as a result. The child suffered from post-traumatic stress disorder, and the court concluded it was not in her best interest to re-introduce her absentee father into her life. Chris appeals.

## II.    Analysis of Father's Claims

We start with the juvenile court's statutory basis for the termination: section 232.116(1)(f). Under that alternative, the State must show the child is four years old or older, has been adjudicated CINA, has been removed from the home for a requisite period of time, and the juvenile court could not safely return the child to the parent's custody under section 232.102. *See* Iowa Code § 232.116(1)(f).

On appeal, the father does not directly assert the State did not prove the four required elements.[2] Instead, Chris contends the DHS did not make reasonable reunification efforts. He argues if the DHS had made those efforts, he would have been able to show his ability to care for I.L. under subsection (f). Chris also blames the lack of reasonable services offered by the DHS for his failure to maintain a close relationship with his daughter.

The DHS is required to make every reasonable effort to return children home—consistent with their best interests. Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Reasonable efforts are not a "strict substantive requirement of termination." *Id.* If a parent does not request additional services at an appropriate time, we may find the parent has waived the

---

[2] If the father were challenging the State's proof, in our de novo review, we would find the State proved the elements by clear and convincing evidence. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

argument that DHS did not make reasonable efforts. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).

The juvenile court determined the DHS offered an array of services to I.L.'s family. Granted, most of the services involved her mother and stepfather. But the court did note the DHS provided supervised visitation for Chris. The court also found it was Chris who discontinued those visits.

In our de novo review of the record, we conclude Chris did not take advantage of the interactions with his daughter offered by the DHS and did not ask for more or different services during the CINA case. Chris needed to request additional services to advance a reasonable efforts claim on appeal. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (holding the DHS "has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing."). From January 2012 to December 2013, Chris made no contact with DHS despite being represented by counsel and aware of the ongoing CINA proceedings. Because Chris was not in contact with the DHS or participating in visitation, the DHS was unable to recommend or provide additional services. The father's inability to assume care of I.L. at the time of the termination hearing is due to his indifference, or at least inaction, and not a lack of reasonable effort by the DHS.

Chris also argues termination is not in I.L.'s best interest, citing Iowa Code section 232.116(3)(c). That provision permits the juvenile court to deny the petition if there is clear and convincing evidence termination would be detrimental

to the child due to the closeness of the parent-child relationship. The factors in section 232.116(3) are permissive, not mandatory. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Considering the circumstances of each case, the juvenile court may exercise its discretion in deciding whether to apply those factors to save the parent-child relationship. *Id.*

This record does not reveal a close relationship between I.L. and her father. In fact, Chris has been absent for four of seven years—a majority of her life time. The juvenile court found Chris had "no bond" with I.L. and opined "the parent-child relationship cannot be maintained where there exists only a remote possibility . . . Chris will become [a] consistent parent[ ] sometime in the unknown future." Like the juvenile court, we conclude the father's long absences from I.L.'s life cast doubt on his ability to be a stable parent for her in the long term. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012). We find no clear and convincing evidence that termination of the father's rights caused any harm to I.L.

**AFFIRMED.**